Anjali J. Patel, SBN 28138
**Tyler Allen Law Firm, PLLC**
4201 North 24th Street, Suite 200
Phoenix, AZ 85016-
602-456-0545 telephone
602-995-3999 fax
anjali@allenlawaz.com
*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| **Kristen Westling,** | **Civil Action No:** |
| Plaintiff, | |
| and | |
| | **COMPLAINT AND JURY TRIAL DEMAND** |
| **Lloyd Austin, Secretary Department of Defense,** | |
| Defendant. | |

## COMPLAINT FOR DAMAGES, DECLARATORY AND EQUITABLE RELIEF

Ms. Kristen Westling, Plaintiff, by and through undersigned counsel, files this Complaint for Damages and Equitable Relief, and shows the Court as follows:

**I.   PRELIMINARY STATEMENT**

1. This action seeks actual damages, declaratory, injunctive, and equitable relief, compensatory damages, costs and another relief deemed appropriate by this Court for the gender discrimination, disability discrimination, and reprisal suffered by Plaintiff, Ms. Kristen Westling, ("Ms. Westling") in her treatment by Defendant.

**II.   JURISDICTION**

2. This action is brought for gender and disability discrimination and reprisal

under the Rehabilitation Act of 1973, and Title VII of the Civil Rights Act of 1964, as amended. The jurisdiction of this court is invoked to secure protection and redress deprivation of rights secured by federal law which prohibits discrimination against employees because of their protected class and activities.

3. The jurisdiction of this Court is invoked pursuant to its original jurisdiction over cases and controversies arising under federal law, pursuant to 28 U.S.C. § 1331, and all prerequisites to bringing this suit have been met. This suit is properly before the court.

4. Plaintiff made has made three timely informal Equal Employment Opportunity ("EEO") contacts regarding counseling the claims at issue in this action: the first on or about October 4, 2016; the second on or about February 7, 2018; and the third on or about July 31, 2019. Plaintiff filed her first formal complaint on or about November 2, 2016; the second on or about April 20, 2018; and the third on or about October 7, 2019. Copies of the formal complaints are attached and incorporated as if set forth herein.

5. On July 20, 2020, the Equal Employment Opportunity Commission ("EEOC") granted the Agency's Motion to Consolidate, and considered all Plaintiff's EEO complaints together.

6. On March 24, 2022, the EEOC issued a hearing decision. The Agency issued the final order on April 2, 2022. The Plaintiff filed an appeal from the final order on April 30, 2022. The EEOC affirmed the Agency's final order on August 22, 2022.

7. Plaintiff files this Complaint within 90 days of receiving the appellate decision, and it is timely.

**III. VENUE**

8. This action properly lies in the United States District Court for the District of Arizona, pursuant to 29 U.S.C. § 1391(b), because the claim arose in this judicial district, and pursuant to 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practice was committed in this judicial district.

**IV. PARTIES**

9. Ms. Westling was an employee with the Department of Veterans Affairs at

all relevant times.

10. Ms. Westling is a resident of Oro Valley, Arizona, and is a citizen of the United States.

11. The Defendant is a federal government agency and has offices throughout the United States, including in Tucson, Arizona. Defendant is an employer, engages in an industry affecting commerce, and, upon information and belief, employs over 500 regular employees.

## V. FACTS

12. Plaintiff is employed by the Department of Defense as a Senior Auditor, GS-0511-12.

13. Plaintiff is female.

14. Plaintiff has a mental disability, because she suffered from anxiety and post-partum depression since 2011.

15. Plaintiff also had a medication change in 2016.

16. John Sabga, Resident Auditor, GS-0511-14, was Plaintiff's second level supervisor.

17. Kim Hehe, Supervisory Auditor, Branch Manager, GS-0511-14, is Plaintiff's former supervisor.

18. Barry Meltzer, Supervisory Auditor, GS-0511-13, is Plaintiff's former supervisor.

19. Robert Paquette, Corporate Audit Director, ES-0511-00, was Plaintiff's third level supervisor.

**Events from May/June 2015 to March 2017**

20. Plaintiff incorporates by reference paragraphs 1-19 of her complaint as if fully set forth herein.

21. In May/June of 2015, Plaintiff made a complaint to Mr. Sabga and Mr.Paquette regarding her supervisor Mr. Meltzer not meeting audit requirements pursuant

to "generally accepted government auditing standards."

22. Around the same time, Plaintiff requested to be transferred to a different audit team, because Mr. Meltzer would not provide her with guidance. Plaintiff's transfer request was denied. Mr. Sabga told Plaintiff that the reason she was denied her transfer request was her communication issues.

23. Furthermore, Mr. Sabga stared at Plaintiff's chest at this meeting, which made her uncomfortable.

24. Mr. Sabga ordered Plaintiff to attend a communications class due to her communication issues. Plaintiff was the only one ordered to attend the class, despite the fact that Mr. Sabga told her that she was not the only auditor with communication issues when she asked.

25. In November of 2015, Mr. Sabga transferred Plaintiff to another team, after accusing her of failing to communicate with Mr. Meltzer.

26. In May of 2016, while Plaintiff was working part time while on maternity leave, Mr. Sabga denied her the opportunity to correct her audit, and gave the audit to another auditor.

27. In August of 2016, Mr. Sabga denied her the opportunity to discuss her audit opinion before changing it, which violated departmental policy.

28. Also in August of 2016, Plaintiff was working on a Saturday. Ms. Hehe sent her aggressive text messages and began calling her about work issues. At around 5 PM, Plaintiff informed Ms. Hehe that she was done for the day and would be out with her family. Ms. Hehe became upset about Plaintiff's lack of response after work hours on a Saturday, and texted her: "this is NOT something you want to do to me right now!"

29. On October 4, 2016, Plaintiff received a written reprimand for her "unprofessional behavior" from May to September 2016. Mr. Sabga cites the aforementioned interaction between Plaintiff and Ms. Hehe as support for her unprofessional behavior. The written reprimand also quotes Instant Message (IM) conversations to support Plaintiff's unprofessional behavior, but these conversations were

taken out of context and do not support a claim that Plaintiff was unprofessional.

30. Furthermore, Mr. Sabga mentioned in the written reprimand that he is "genuinely concerned about [her] personal wellbeing," and suggested that she should seek help of a counselor. This suggests that Mr. Sabga is aware of Plaintiff's mental disability. Mr. Sabga had not suggested that Plaintiff's male coworker seek professional help when he had disagreements with them.

31. Plaintiff initiated her EEO activities On October 4 by contacting an EEO Counselor, the same day that she received the written reprimand. Mr. Sabga, Ms. Hehe, and Mr. Paquette were contacted by EEO Counselor before Nov. 8, 2016, and are aware of Plaintiff's EEO activities.

32. After Mr. Sabga became aware of Plaintiff's EEO activities, he pushed past her in the hallway to physically intimidate her. Plaintiff complained to Ms. Hehe about the incident.

33. Mr. Sabga claimed he did not know of Plaintiff's EEO activities until March of 2017. This was false, as the EEO Counselor's Nov. 8, 2016 report documented statements from Mr. Sabga.

34. On February 16, 2017, Ms. Hehe rated Plaintiff "Unacceptable" on two categories of her performance review: Communication and Organizational Support, and Working Relationships. This caused Plaintiff's overall performance evaluation to be downgraded to "Unacceptable."

35. Ms. Hehe provides no specific reasons for giving Plaintiff an "Unacceptable" rating, except for a general statement that she had interacted with her coworkers and supervisors unprofessionally. Ms. Hehe also refused to discuss the reasoning behind the rating with Plaintiff.

36. On February 23, 2017, Mr. Sabga suspended Plaintiff's telework privilege after Plaintiff's performance review. Plaintiff had been working on telework for 8 years, under every supervisor she's had.

37. In March of 2017, Mr. Sabga removed her from the audit proposal team with

no explanation, despite her being the most experienced person in one phase of the proposal segment.

38. On March 16, 2017, Plaintiff was placed on a Performance Improvement Plan (PIP). Plaintiff believes that Mr. Sabga directed her supervisor to place her on PIP. The PIP refers to Plaintiff's communication and working relationships.

39. Plaintiff amended her EEO complaint to include the PIP.

40. Mr. Sabga disclosed the information on Plaintiff's PIP to multiple other people.

41. In March of 2017, Mr. Sabga informed Plaintiff that she could not use her official work time on EEO activities.

42. Based on these facts, Defendant unlawfully discriminated against Plaintiff based on her gender and disability, causing Plaintiff damages.

43. The conduct of Defendant with regard to Plaintiff constitutes retaliation for engaging in protected speech in violation of Title VII of the Civil Rights Act of 1964 as amended.

**Events from June 2017 to February 2018**

44. During this period, Mr. Thomas Altemus, Supervisory Auditor, GS-0511-13, was Complainant's first level supervisor. Mr. Altemus stated that he knew about Plaintiff's prior EEO activities.

45. On June 9, 2017, when Plaintiff was working on an audit, Mr. Altemus denied Plaintiff's request to use the Statistical Analysis System (SAS), a new software program. Meanwhile, he permitted a male junior auditor, Mr. David Daws, to use SAS.

46. In July of 2017, after Plaintiff successfully completed her PIP, she requested to be transferred to a team other than Mr. Altemus'. Mr. Altemus denied her request.

47. She requested to be transferred again in October, November, and December of 2017, and Mr. Altemus denied her request each time.

48. On July 21, 2017, Mr. Altemus denied Plaintiff the opportunity to be

considered for a temporary Supervisory Auditor position, stating that she was not qualified; however, he did allow two male senior auditors to be considered for the position.

49. Despite Plaintiff having a "Fully Successful" evaluation record, and more experience than one of the male auditors nominated, Mr. Altemus insisted that only employees with "Exceeds Fully Successful" evaluation records should be considered. Mr. Sabga confirmed that candidates with ratings of "Fully Successful" or above are qualified to be considered for the position.

50. During a team meeting on August 1, 2017, Plaintiff announced that she had achieved "reconciliation" in one of her audits. Mr. Altemus told her that she did not, and that reconciliation is hard to achieve. He proceeded to leave Plaintiff out of the discussion on whether she had achieved reconciliation, despite her having hard evidence that she had done so.

51. Mr. Altemus did not deny that he refused to afford Plaintiff an opportunity to explain how she had achieved reconciliation, but rather only stated he is "always willing to review her work as she progressed."

52. On August 8, 2017, Mr. Altemus informed Plaintiff in her cubicle that her step (pay) increase for September 2017 would be late due to a glitch in the computer system. Everyone around Plaintiff's cubicle could hear Mr. Altemus' statement. Furthermore, he smiled at Plaintiff while informing her of the fact, which Plaintiff believes was purposeful to elicit a negative emotional response from her.

53. On August 15, 2017, Mr. Altemus scheduled an impromptu meeting between Plaintiff and Mr. Jesse Hancock, a Supervisory Auditor, so that Plaintiff can show Mr. Hancock her work on an audit assignment. Mr. Altemus stated that the reason for the meeting was that Mr. Hancock had performed a similar audit the previous year. However, prior to this meeting, Plaintiff had already met with Mr. Hancock to discuss the audit. Plaintiff believes the true purpose of the meeting was to justify her termination.

54. On December 11, 2017, Plaintiff requested leave of absence for December 14, 2017, to take her dog to the veterinarian. December 14 was the day for an office holiday

event. Mr. Altemus denied Plaintiff's request, stating that attendance for the holiday event is required. Plaintiff was not aware of any policy that stated attendance to this event was mandatory.

55. Mr. Christopher Devlin, a member of Mr. Altemus' team, stated that his understanding was that attendance of the holiday event was encouraged but optional. Ms. Zadro, Plaintiff's first-level supervisor at the time, stated that she did not indicate that the holiday event was mandatory in her communication to attendees. Ms. Renee Connors, Plaintiff's colleague, requested leave of absence for the same reason as Plaintiff, and her request was granted.

56. On December 15, 2017, the day after the office holiday event, Mr. Altemus asked Plaintiff to keep him informed of her whereabouts throughout the day. He called her at the end of the workday and counseled her about her behavior the previous day for 30 minutes. Plaintiff did not agree to stay on the phone after the workday had ended, and requested to postpone the meeting to the next business day. Mr. Altemus insisted on the counseling anyway.

57. On January 17, 2018, Mr. Altemus supported Mr. Siemsen's directive for Plaintiff to review a capital project. She informed them that this project was out of the scope of her audit scope. Mr. Siemsen later agreed with her assessment, but Mr. Altemus wanted her to proceed with the project. Despite this, Plaintiff obtained information needed to resolve the accounting concerns of the project.

58. On January 23, 2018, Plaintiff received her 90-day Progress Review for the period of June 14, 2017, to December 15, 2017. Mr. Altemus' evaluation indicated that she failed to meet the performance standards of her position in Critical Element 5, Internal Communication and Support.

59. Mr. Altemus stated that Plaintiff never specifically told him about what aspect of the review she disagreed with. This is not true. Plaintiff disagreed with Mr. Altemus' evaluation, and communicated with him via e-mail about the specific instances she disagreed with. Mr. Altemus did not address Plaintiff's disagreement. Furthermore,

Plaintiff stated that Mr. Altemus told her he did not respect her at all during their feedback session.

60. On February 13, 2018, Mr. Sabga issued Plaintiff a Proposed Notice of Removal based on her failure to meet performance standards of her position in Critical Element 5. However, Critical Element 5 was no longer an evaluated standard since April 2017.

61. Plaintiff has not had a good working relationship with Mr. Altemus since 2014, when she reported him to management. Plaintiff has never had a good working relationship with Mr. Sabga, who was the subject of Plaintiff's 2017 EEO Complaint.

62. Mr. Sabga determined that Plaintiff should be removed from her position, and Mr. Altemus provided him with the information necessary to make the determination.

63. Based on these facts, Defendant unlawfully discriminated against Plaintiff based on her gender, causing Plaintiff damages.

64. The conduct of Defendant with regard to Plaintiff constitutes retaliation for engaging in protected speech in violation of Title VII of the Civil Rights Act of 1964 as amended.

**Events from June to July 2019**

65. Plaintiff was removed from her position in April of 2018. She appealed the decision to the Merit System Protection Board (MSPB), and was reinstated by the Agency on June 23, 2019, as interim relief. Plaintiff returned to work on June 26, 2019. Her first level supervisor was Joe Creasy, and her second level supervisor was Mr. Sabga.

66. Upon her arrival on June 26, 2019, Mr. Sabga held an impromptu meeting with Plaintiff. Mr. Sabga made threatening comments to her.

67. Specifically, he said "the teams are already established, and everyone works extremely well together, and including you on the team would be a challenge."

68. He also said, "your experience is needed on a priority audit, but after September, I have no idea what is going to happen to you."

69. On July 12, 2019, when she was due to receive her first paycheck after the pay-period ended, she did not receive a paycheck.

70. On July 15, Plaintiff enquired about the missing paycheck, and was informed that the check was mailed to Headquarters due to missing payroll information.

71. On July 17, she received a package from HR which did not include her paycheck.

72. On July 18, she was informed that the paycheck may have been mailed to another employee.

73. On July 26, HR asked her to sign paperwork to void the missing check and reissue the check.

74. Plaintiff did not receive her paycheck until August 7, 2019.

75. Based on these facts, Defendant unlawfully discriminated against Plaintiff based on her gender, causing Plaintiff damages.

76. The conduct of Defendant with regard to Plaintiff constitutes retaliation for engaging in protected speech in violation of Title VII of the Civil Rights Act of 1964 as amended.

77. Plaintiff is entitled to the relief set forth in the prayer for relief below.

## VI.   PRAYER FOR RELIEF

78. Wherefore, Plaintiff prays that this Court:

(A) declare the conduct engaged in the Defendant to be in violation of his rights,

(B) award Plaintiff back pay and actual damages,

(C) award Plaintiff compensatory damages;

(D) award Plaintiff costs and attorney's fees; and

(E) grant such other relief as it may deem just and proper.

///

///

///

## VII. JURY DEMAND

79. Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

RESPECTFULLY SUBMITTED this 9th day of November, 2022.

TYLER ALLEN LAW FIRM, PLLC

/s/ Anjali J. Patel
Anjali J. Patel
*Attorney for Plaintiff*
